## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

Rodney Turner,                                           __Consolidated Cases__

              **Plaintiff,**

v.                                                       **Case No. 10-2533-JWL**


William "Bill" Delaney et al.,

              **Defendants.**

_____

Jill Conklin, in her capacity as Special Administrator
of the Estate of Marc D. Conklin,

              **Plaintiff,**

v.                                                       **Case No. 10-2608-JWL**


William "Bill" Delaney et al.,

              **Defendants.**


## MEMORANDUM & ORDER

Plaintiffs filed a first amended consolidated complaint against defendant William Delaney, an agent for the Kansas Bureau of Investigation, alleging constitutional claims for malicious prosecution, false arrest and abuse of process under 42 U.S.C. § 1983 in connection with grand jury proceedings that resulted in the indictment of Mr. Turner and Mr. Conklin. Those indictments were ultimately dismissed by the Kansas Supreme Court. In addition,

plaintiffs assert claims for supervisor liability under § 1983 against defendants Robert E. Blecha, the Director of the Kansas Bureau of Investigation, and Larry Thomas, the Assistant Director of the Kansas Bureau of Investigation.   Finally, plaintiffs assert state law claims against Mr. Delaney for malicious prosecution, false arrest and abuse of process.

This matter is presently before the court on defendants' motion to dismiss the first amended consolidated complaint (doc. 36) under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).   As will be explained, the court concludes that plaintiffs' consolidated complaint fails to state a claim for relief as to plaintiffs' § 1983 claims because those claims are barred by the doctrine of absolute immunity.   In light of that decision, the court declines to address defendants' alternative arguments for dismissal of the § 1983 claims and declines to exercise supplemental jurisdiction over plaintiffs' state law claims. Thus, the court grants defendants' motion and dismisses these consolidated cases.[1]

**Factual and Procedural Background**

The following allegations are taken from plaintiffs' first amended consolidated complaint.   Defendant William "Bill" Delaney, at all relevant times, has been employed as an agent with the Kansas Bureau of Investigation (KBI).   As a KBI investigator, defendant Delaney's first "big case" involved the December 1987 murder of Charles W. "Chuck" Thompson.  Mr. Thompson was an attorney in Kansas City, Kansas and was active in politics.

---

[1] Defendants also move to dismiss plaintiffs' official capacity claims against defendants on the grounds that such claims, which seek only retrospective monetary relief, are barred by state sovereign immunity.  In response, plaintiffs expressly disclaim any allegations for relief against defendants in their official capacities.  This aspect of defendants' motion, then, is granted as unopposed and all official capacity claims are dismissed with prejudice.

At the time of his death, he was serving as the Democratic Chairman of the Wyandotte County Central Committee.  The murder investigation was ultimately assigned to defendant Delaney.  The investigation remains unsolved and defendant Delaney, more than twenty-five years later, continues to investigate the case.  According to plaintiffs, the investigation of the Thompson murder has become a "part-time obsession" for defendant Delaney.

In the course of his investigation, including interviews of various individuals, defendant Delaney has persistently pressed his belief that plaintiff Rodney Turner and Marc Conklin had some knowledge of or involvement in the murder of Mr. Thompson.  Plaintiff Rodney Turner is a resident of Kansas City, Kansas and is now a semi-retired Wyandotte County attorney who has been involved in Wyandotte County politics for many years.  In addition, Mr. Turner, for more than thirty years, has provided legal services for the Board of Public Utilities (BPU) of Kansas City, Kansas.  At the time of the Thompson murder, Mr. Turner was the County Counselor of Wyandotte County.   Plaintiff Jill Conklin is Marc Conklin's widow.   Mr. Conklin, who committed suicide in March 2009, was the former General Counsel and Chief Administrative Officer of BPU.   Mr. Turner and Mr. Conklin consistently denied any involvement in or knowledge of the Thompson murder.   Nonetheless, defendant Delaney, at all times, kept a "close eye" on matters involving Mr. Turner and/or Mr. Conklin.

In January 2008, one R.J. Reardon filed a citizen petition with the Wyandotte County District Court alleging instances of fraud and corruption by BPU officials.  The citizen petition did not mention Mr. Turner or Mr. Conklin by name and it did not contain allegations specific to the roles played by Mr. Turner or Mr. Conklin within BPU.  According to the complaint, the allegations made against BPU caught the attention of defendant Delaney because of Mr. Turner

3

and Mr. Conklin's association with BPU and, in his mind, their association with the Thompson murder.  Plaintiffs allege that defendant Delaney (who, by that time, had become the KBI's special agent in charge of the KBI's Overland Park, Kansas office which handled matters arising in Wyandotte County) and Wyandotte County District Attorney Jerome Gorman met with R.J. Reardon shortly after the filing of the citizen petition.  Defendant Delaney and District Attorney Gorman had worked together on several cases in the past such that they were well acquainted by the time they met with Mr. Reardon.

On March 5, 2008, District Attorney Gorman and defendant Delaney convened a grand jury proceeding in Wyandotte County, Kansas to hear evidence and testimony regarding the citizen petition.  Between March 5, 2008 and August 27, 2008, the grand jury met 17 times. Throughout this period, defendant Delaney "assisted and advised" District Attorney Gorman on all aspects of the grand jury proceeding.  Plaintiffs allege that defendant Delaney influenced District Attorney Gorman to use the grand jury proceeding to target Mr. Turner and Mr. Conklin for purposes of questioning them about the Thompson murder and intimidating them into providing information that they supposedly had about the murder.  According to plaintiffs, defendant Delaney believed that an indictment on the BPU allegations, or even the threat of an indictment, would cause Mr. Turner and/or Mr. Conklin to cooperate with him on the Thompson investigation.  Despite the fact that the Thompson murder had no relationship to the BPU allegations or investigation, defendant Delaney asked about the Thompson murder whenever he conducted interviews outside the grand jury.

District Attorney Gorman subpoenaed both Mr. Turner and Mr. Conklin to appear before the grand jury.  Through counsel, Mr. Turner and Mr. Conklin advised the district attorney that

they would invoke their Fifth Amendment right not to answer questions and reminded the district attorney that it is "generally inappropriate to call a witness who had invoked his Fifth Amendment rights if he is the target of the investigation."   District Attorney Gorman nonetheless called Mr. Turner and Mr. Conklin to the witness stand and proceeded to ask each more than 100 questions, forcing Mr. Turner and Mr. Conklin to invoke their Fifth Amendment right against self-incrimination over and over again.   Plaintiffs allege that defendant Delaney "played an active role in encouraging District Attorney Gorman to disregard Turner's and Conklin's constitutional and statutory rights."

On August 27, 2008, the grand jury returned sealed indictments charging Mr. Turner and Mr. Conklin with two counts of theft  in violation of K.S.A. § 21-3701 and fifty-five counts of presenting false claims in violation of K.S.A. § 21-3904.   The indictments were based on the theory that Mr. Turner did not actually perform the legal services identified in the unitemized bills that were approved by Mr. Conklin.   Mr. Turner and Mr. Conklin were arrested and the indictments were unsealed on October 3, 2008.   Both Mr. Turner and Mr. Conklin were arraigned at that time and released on $25,000 personal recognizance bonds.

In March 2009, Mr. Turner and Mr. Conklin jointly filed a motion to dismiss the indictments for grand jury abuse.  Mr. Conklin committed suicide two weeks later.  As a result of his death, the charges against Mr. Conklin were dropped and the case against him was dismissed.  In August 2009, the Wyandotte County District Court granted Mr. Turner's motion to dismiss the indictment, finding that the State and defendant Delaney had undermined the grand jury process to the point of depriving Mr. Turner of his due process and Fifth Amendment rights.  The State appealed the dismissal of the indictment to the Kansas Court of Appeals.

5

While that appeal was pending, plaintiffs, in October and November 2010 respectively, filed their lawsuits in this court.  The claims asserted in those initial complaints were made under § 1983 and were based solely on defendant Delaney's grand jury testimony. Plaintiffs alleged, for example, that defendant Delaney repeatedly discussed the Chuck Thompson murder in the grand jury's presence; suggested to the grand jury that plaintiffs were somehow involved in the Chuck Thompson murder; told the grand jury that he wanted to question plaintiffs about the murder; suggested to the grand jury that if plaintiffs were indicted on the BPU matter, it might force plaintiffs to cooperate on the murder investigation; told the grand jury that they should call Mr. Turner to testify; and, after Mr. Turner appeared and repeatedly invoked his Fifth Amendment rights, commented to the jury on Mr. Turner's silence by advising the jury that Mr. Turner should have shown proof of the work he was doing for BPU.  The cases were consolidated in January 2011 for pretrial and discovery purposes.

In April 2011, the Kansas Court of Appeals issued its opinion reversing the district court's dismissal of the indictment.  *State v. Turner*, 250 P.3d 286 (Kan. Ct. App. 2011).  At that time, plaintiffs' cases in this court were stayed pending a decision from the Kansas Supreme Court on Mr. Turner's request for review.  The Kansas Supreme Court granted the request for review and the stay was extended pending a merits decision from the Kansas Supreme Court. The stay was lifted in September 2014 after the Kansas Supreme Court issued its opinion reinstating the district court's dismissal of the indictment against Mr. Turner.  *State v. Turner*, 333 P.3d 155, 171-72 (Kan. 2014).  According to the Kansas Supreme Court, three errors warranted dismissal of the indictment:  the District Attorney's violation of Mr. Turner's Fifth Amendment right by asking him numerous questions in front of the grand jury which required

6

him to invoke the privilege; defendant Delaney's comments on Mr. Turner's silence in violation of his Fifth Amendment right against self-incrimination; and defendant Delaney's testimony concerning the Chuck Thompson murder.  Id. at 170.  As explained by the Court, defendant Delaney's suggestion to the grand jury that they needed to indict Mr. Turner on the false claims and theft charges in order to permit defendant Delaney to solve the murder case "substantially influenced the grand jury's decision to indict, if not compel[led] such a result."  *Id*. at 171.  The Kansas Supreme Court found that after disregarding unconstitutional or other improper grand jury testimony from defendant Delaney, the State's remaining evidence amounted to "equivocal nonproof testimony."  *Id*. at 171-72.

While this case was stayed, the United States Supreme Court issued its opinion in *Rehberg v. Paulk*, 132 S. Ct. 1497 (2012), in which it held that a witness who testifies in a grand jury proceeding is entitled to absolute immunity from § 1983 claims based on his or her grand jury testimony.  Understanding that *Rehberg* was fatal to their claims, plaintiffs filed a first amended consolidated complaint in November 2014 to remove any reliance on defendant Delaney's testimony and to expressly disclaim any reliance on defendant Delaney's testimony in support of their § 1983 claims. Plaintiffs also asserted, for the first time, state law claims for malicious prosecution, false arrest and abuse of process.

**Analysis**

In his motion to dismiss, defendant Delaney asserts that all of plaintiffs' § 1983 claims are necessarily based on defendant Delaney's grand jury testimony and, accordingly, he asserts absolute immunity under the Supreme Court's decision in *Rehberg v. Paulk*, 132 U.S. 1497

(2012).  In *Rehberg*, the chief investigator for a district attorney was sued in a § 1983 action

following Rehberg's indictment based on investigator Paulk's grand jury testimony.  132 S. Ct.

at 1501.  Rehberg's malicious prosecution claim was based solely on the allegation that Paulk

had conspired to present and did present false testimony to the grand jury.  *Id*.  The Supreme

Court held that "a grand jury witness has absolute immunity from any § 1983 claim based on the

witness' testimony."  *Id*. at 1506.  As further explained by the Court:

> [T]his rule may not be circumvented by claiming that a grand jury witness
> conspired to present false testimony or by using evidence of the witness'
> testimony to support any other § 1983 claim concerning the initiation or
> maintenance of a prosecution.  Were it otherwise, a criminal defendant turned civil
> plaintiff could simply reframe a claim to attack the preparation instead of the
> absolutely immune actions themselves.  In the vast majority of cases involving a
> claim against a grand jury witness, the witness and the prosecutor conducting the
> investigation engage in preparatory activity, such as a preliminary discussion in
> which the witness relates the substance of his intended testimony.  We decline to
> endorse a rule of absolute immunity that is so easily frustrated.

*Id*. at 1506-07 (citations and quotations omitted).  In a footnote, the Court acknowledged that

absolute immunity would not extend to all activity that a witness conducts outside of the grand

jury room.  *Id*. at 1507 n.1.  By way of example, the Court indicated that a law enforcement

official who falsified an affidavit or otherwise fabricated evidence separate from his or her false

grand jury testimony would not be entitled to absolute immunity for such misconduct.  *Id*.;

*accord Lisker v. City of Los Angeles*, 2013 WL 1276047, at *16-17 (C.D. Cal. Feb. 4, 2013)

(discussing *Rehberg* and distinguishing between defendant's dual roles as witness and

fabricator; *Rehberg* does not protect witness's independent creation of false evidence).

   Although the Tenth Circuit has not had the opportunity to apply *Rehberg* in a case before

it, the Second Circuit has provided guidance for district courts analyzing § 1983 claims under

*Rehberg*.  In *Coggins v. Buenora*, 775 F.3d 108 (2d Cir. 2015), the Second Circuit advised that when a defendant claims absolute immunity for his grand jury testimony under *Rehberg*, the district court "should determine whether the plaintiff can make out the elements of his § 1983 claim without resorting to the grand jury testimony." *Id*. at 113.  According to the Circuit, if the claim "exists independently of the grand jury testimony, it is not 'based on' that testimony, as that term is used in *Rehberg*.  Conversely, if the claim requires the grand jury testimony, the defendant enjoys absolute immunity under *Rehberg*." *Id*.  (citation omitted).

*Section 1983 Claims for Malicious Prosecution and False Arrest*

The court begins with plaintiffs' § 1983 claims for malicious prosecution and false arrest.  To maintain these claims under § 1983, plaintiffs must demonstrate the elements of a common law claim and show that their Fourth Amendment right to be free from unreasonable search and seizure has been violated.  *See Taylor v. Meacham*, 82 F.3d 1556, 1561 (10th Cir. 1996).   To show malicious prosecution under Kansas law, plaintiffs must prove a lack of probable cause for initiating or procuring the indictments against plaintiffs.  *See Braun v. Pepper*, 578 P.2d 695, 698 (Kan. 1978).   Similarly, to show false arrest under Kansas law, plaintiffs must prove a lack of probable cause for plaintiffs' arrest.  *Thompson v. General Fin. Co*., 468 P.2d 269, 280 (1970).  Looking to *Coggins*, then, the question becomes whether plaintiffs can show a lack of probable cause for the indictment and arrest without resorting to Delaney's grand jury testimony.  The court concludes that they cannot do so.

In their submissions, plaintiffs acknowledge that an indictment returned by a grand jury is generally held to be prima facie evidence of the existence of probable cause.  *See D'Addabbo v.*

*United States*, 316 Fed. Appx. 722, 726-27 (10th Cir. 2008).  To overcome the presumption of probable cause, they must establish that the indictment was procured through some type of misconduct such as fabricated evidence or false testimony.  *See* Plaintiffs' Brief at 14; *Moore v. Hartman*, ___ F. Supp. 3d ___, 2015 WL 1812852, at *55 (D.D.C. Apr. 17, 2015) (to overcome presumption of probable cause created by grand jury indictment, plaintiff must prove that wrongful conduct rather than valid evidence persuaded the grand jury to return indictment); *Crow v. United States*, 634 F. Supp. 1085, 1092 (D. Kan. 1986) (an indictment is not sufficient to show probable cause if the plaintiff alleges that the indictment was procured by fraud or false testimony); *see also Wolford v. Lasater*, 78 F.3d 484 (10th Cir. 1996) (plaintiff failed to establish that false testimony presented to grand jury was material to grand jury's probable cause determination such that § 1983 malicious prosecution claim was properly dismissed).

Toward that end, plaintiffs first contend in their submissions that the court need look no further than the Kansas Supreme Court's opinion in which the court specifically held that the valid evidence presented to the grand jury (after putting aside defendant Delaney's improper testimony and the DA's violation of plaintiffs' Fifth Amendment rights against self-incrimination) was insufficient to support the indictments.  *See State v. Turner*, 333 P.3d 155, 170-72 (Kan. 2014).  The problem with this argument is that the *Turner* decision, to the extent it supports plaintiffs' argument that the indictments lacked probable cause, dismissed the indictments based on defendant Delaney's improper testimony.  As explained by the Kansas Supreme Court, defendant Delaney's improper testimony "substantially influenced" if not compelled the grand jury's decision to indict Mr. Turner.  *Id.* at 171.  At any trial of this case, then, plaintiffs necessarily will have to resort to defendant Delaney's grand jury testimony to

10

prove to the jury that the grand jury indictments are not entitled to a presumption of probable cause. Indeed, the primary inquiry that arises when a plaintiff asserts in a § 1983 action (as plaintiffs here have plainly done) that an indictment or arrest was the product of misconduct is the materiality of the misconduct in relation to the determination of probable cause. *Grubbs v. Bailes*, 445 F.3d 1275, 1278 (10th Cir. 2006). As explained by the Circuit in *Grubbs*:

> If hypothetically correcting the misrepresentation or omission would not alter the determination of probable cause, the misconduct was not of constitutional significance and is not actionable under § 1983; but if this hypothesizing would alter the probable-cause determination, the misconduct undermined Fourth Amendment guarantees and may support redress under § 1983.

*Id.* (citations omitted); *see also Miller v. Arbogast*, 445 Fed. Appx. 116, 119 (10th Cir. 2011) (first inquiry in determining existence of probable cause in § 1983 malicious prosecution action is whether items of evidence were fabricated). Defendant Delaney's alleged misconduct, then, is the focal point of the probable cause analysis in plaintiffs' § 1983 malicious prosecution and false arrest claims. In the *State v. Turner* decision, defendant Delaney's misconduct is limited to his extensive and improper grand jury testimony. For this reason, plaintiffs cannot rely on the Kansas Supreme Court's opinion to establish a lack of probable cause without running afoul of *Rehberg*. *See Watson v. Grady*, 2015 WL 2168180, at *19 (S.D.N.Y. May 7, 2015) (after *Rehberg*, plaintiff could not use defendants' grand jury testimony to show fraud or misconduct to erode the premise that the grand jury acted judicially); *Laboy v. Ontario County*, 2015 WL 1977251, at *11 n.2 (W.D.N.Y. May 4, 2015) (plaintiff could not rebut presumption of probable cause created by existence of grand jury indictment by relying on false grand jury testimony) (collecting cases).

11

Plaintiffs also suggest that they can prove a lack of probable cause by focusing not on defendant Delaney's testimony but on the fact that plaintiffs were required during the grand jury proceedings to invoke their Fifth Amendments rights against self-incrimination more than 100 times in response to District Attorney Gorman's questions.  As noted earlier, the Kansas Supreme Court concluded that the DA violated Mr. Turner's Fifth Amendment rights by asking him numerous questions in front of the grand jury that required him to invoke the privilege each and every time.  *State v. Turner*, 333 P.3d at 170.  Of course, to establish § 1983 liability with respect to defendant Delaney, plaintiffs need to link their invocation of their Fifth Amendment rights to some misconduct on the part of defendant Delaney.  In their consolidated complaint, plaintiffs allege that the DA subpoenaed plaintiffs; that the DA called plaintiffs to the witness stand; and that DA asked the questions that caused plaintiffs to invoke their rights before the grand jury.  With respect to defendant Delaney, plaintiffs allege only that "Defendant Delaney played an active role in encouraging District Attorney Gorman to disregard Turner's and Conklin's constitutional and statutory rights."  This allegation is conclusory and the consolidated complaint is devoid of any factual allegations plausibly suggesting that defendant Delaney and the DA had any discussions concerning the disregard of plaintiffs' Fifth Amendment rights.

In any event, even if plaintiffs had evidence that defendant Delaney persuaded the district attorney to violate plaintiffs' Fifth Amendment rights by, for example, encouraging the district attorney to ask plaintiffs numerous questions before the grand jury and requiring plaintiffs to invoke their rights, defendant Delaney would be entitled to immunity for that conduct.  To be sure, district attorney Gorman is entitled to absolute immunity for his decisions about what

12

questions to ask witnesses testifying before the grand jury.  *See Rogers v. O'Donnell*, 737 F.3d 1026, 1032 (6th Cir. 2013) (prosecutor entitled to absolute immunity for conduct that was an integral party of the judicial process, including decisions regarding witness testimony, what witnesses to use at trial, and what questions to ask them).   To the extent, then, that defendant Delaney discussed with the district attorney what questions to ask Mr. Turner in connection with Mr. Turner's grand jury testimony, he necessarily did so not in his role as an investigator but as an advocate of the State such that he, too, would be entitled to absolute immunity.  *See Thomas v. Kaven*, 765 F.3d 1183, 1191 (10th Cir. 2014) (absolute immunity extends to government officials who perform functions closely associated with the judicial process analogous to those of a prosecutor).  Moreover, the district attorney bears the ultimate responsibility with respect to the questions that he posed to plaintiffs before the grand jury.  Because the district attorney is "shielded by absolute immunity" for those questions, it would be "anomalous" to hold defendant Delaney liable for those questions.  *See Rehberg*, 132 S. Ct. at 1508.[2]

The court does not mean to suggest that defendant Delaney had no involvement in the violation of plaintiffs' Fifth Amendment rights independent of any discussions with the district attorney.   A reading of the *State v. Turner* decision reveals that defendant Delaney certainly participated in the violation.  According to the Kansas Supreme Court, defendant Delaney, in his

---

[2] Plaintiffs urge in their response that defendant Delaney is not entitled to prosecutorial immunity because his only function was that of an investigator such that prosecutorial immunity does not attach.  While this is true for many of the allegations against defendant Delaney, it is not accurate with respect to the specific allegation that defendant Delaney encouraged the district attorney to disregard plaintiffs' Fifth Amendment rights and to ask them questions which required them to invoke their rights against self-incrimination.   By making that allegation, plaintiffs have suggested that defendant Delaney stepped outside his role as an investigator on the case and into the role of the prosecutor.

testimony to the grand jury, encouraged the grand jury to call Mr. Turner as a witness and suggested to the grand jury that Mr. Turner should be willing to tell them what he did to justify the invoices he submitted to the BPU. 333 P.3d at 168. After Mr. Turner appeared and refused to testify, defendant Delaney again appeared before the grand jury and told them that Mr. Turner "was wrong to invoke his constitutional right to remain silent." *Id.* & at 166 ("If the witness has nothing to hide, why doesn't the witness just answer the questions? KBI Agent Delaney . . . put that thought into the heads of these grand jurors."). To the extent, then, defendant Delaney violated plaintiffs' Fifth Amendment rights, he did so by commenting to the grand jury on plaintiffs' refusal to testify. To establish a lack of probable cause based on this misconduct, plaintiffs necessarily find themselves up against *Rehberg*. Because plaintiffs have not explained to the court how they might establish a lack of probable cause for the indictments without resorting to defendant Delaney's improper grand jury testimony, defendant Delaney is absolutely immune under *Rehberg* from plaintiffs' § 1983 malicious prosecution and false arrest claims.

*Section 1983 Claims for Abuse of Process*

To state a claim for abuse of process under Kansas law, a plaintiff must show, among other things, an "improper act in the regular prosecution of a proceeding." *See Lindeman v. Umscheid*, 875 P.2d 964, 973 (Kan. 1994). In support of their claim, plaintiffs urge that they rely only on defendant Delaney's "non-testimonial conduct" and that he is not immune for such conduct under *Rehberg*. Plaintiffs urge that defendant Delaney is not entitled to immunity for non-testimonial misconduct that occurred outside the presence of the grand jury. Each of the

14

cases relied upon by plaintiffs, however, involved "a particular discrete item of physical or expert evidence that was falsely created during the investigative stage to link the accused to a crime." *See Rehberg v. Paulk*, 611 F.3d 628, 841 (11th Cir. 2010).  In *Sankar v. City of New York*, for example, the district court held that *Rehberg* did not defeat the plaintiff's § 1983 malicious prosecution claim because the testifying officer, apart from providing grand jury testimony, had filed a sworn complaint in an effort to move the case against the plaintiff forward.  2012 WL 2923236, at *3 (E.D.N.Y. July 18, 2012).  Similarly, in *Tabaei v. New York City Health and Hospitals Corporation*, the district court rejected a *Rehberg* defense because the defendants, in addition to testifying before a grand jury, had conducted surveillance on plaintiff's home, obtained a subpoena for her bank records, sent undercover agents to her home; and attempted to elicit incriminating statements from the plaintiff using a recording device.  2012 WL 5816882, at *1 (S.D.N.Y. Nov. 14, 2012).  The remaining cases relied upon by plaintiffs—and other cases uncovered by the court—also involve allegations or evidence of specific misconduct independent of grand jury testimony.  *See Coggins*, 776 F.3d at 113 (amended complaint plausibly alleged, among other things, that defendant-officers knowingly falsified and omitted material facts from police reports); *McLennon v. New York City*, 2015 WL 1475819, at *8 n.19 (E.D.N.Y. 2015) (amended complaint alleged that officers falsely reported facts in reports and search warrant affidavits and withheld material exculpatory evidence from prosecutors); *Lisker v. City of Los Angeles*, 2013 WL 1276047, at *15-18 (C.D. Cal. Feb. 4, 2013) (rejecting *Rehberg* defense where defendants fabricated evidence contained in police report, in their investigative notes and in photographs).

Despite plaintiffs' contention to the contrary, the consolidated complaint does not allege misconduct comparable to the misconduct at issue in the cases cited above.  Taken as a whole, the consolidated complaint alleges that defendant Delaney encouraged District Attorney Gorman to target plaintiffs during the grand jury investigation; that defendant Delaney met with District Attorney and Mr. Reardon shortly after the filing of the citizen petition; and that, during interviews he conducted on behalf of the grand jury, defendant Delaney asked about the Chuck Thompson murder.  With respect to defendant Delaney's meetings with the district attorney, the allegations are barred by *Rehberg*, which is most readily apparent from a reading of the Eleventh Circuit's *Rehberg* opinion.  In *Rehberg*, the plaintiff alleged that the chief investigator and the district attorney got together at the pre-indictment stage and essentially made up a story about the plaintiff; that they then told that story to the grand jury; and that the grand jury ultimately returned an indictment based on that story.  611 F.3d 828, 840-41 (11th Cir. 2010).  The Circuit held—and the Supreme Court affirmed—that absolute immunity applied to the conspiracy decision in the investigative stage.  *Id.* at 841.  As explained by the Eleventh Circuit, while the plaintiff contended that the defendants committed acts in furtherance of the conspiracy before the grand jury even convened, the record supported that inference only if the court were to consider as evidence the investigator's testimony as it related back to his pretestimonial acts and statements.  *Id.* (citing *Mastroianni v. Bowers*, 173 F.3d 1363, 1367 (11th Cir. 1999)).  In other words, because the only evidence to show a conspiracy in the pre-indictment phase was the investigator's later false grand jury testimony, and because the investigator was immune for that testimony, the Circuit concluded that the investigator was absolutely immune for conspiracy to present or give grand jury testimony.  *Id.*  As in *Rehberg*, there is no allegation here of any pre-

16

indictment document or other pre-indictment evidence supporting the inference that defendant Delaney encouraged the district attorney to target plaintiffs; indeed, no evidence existed until defendant Delaney testified.  *See id*. at 842; *accord Fappiano v. City of New York*, 2015 WL 94190, at *20 (E.D.N.Y. Jan. 7, 2015) (where fabricated story reaches jury only through investigator's testimony, there is no § 1983 claim for preparatory activity).

With respect to the allegation that defendant Delaney asked about the Chuck Thompson murder during interviews that he conducted outside the jury's presence, plaintiffs' abuse of process claim fails because plaintiffs cannot establish damages without resorting to defendant Delaney's grand jury testimony.  *Bloom v. Arnold*, 248 P.3d 752, 755 (Kan. App. 2011) (abuse of process claim requires showing that improper conduct resulted in damages).  The damages alleged by plaintiffs arise solely from the grand jury's decision to indict plaintiffs.  The allegations in the first amended consolidated complaint do not permit a plausible inference that defendant Delaney's asking about the Chuck Thompson murder in witness interviews had any bearing whatsoever on the grand jury's decision to indict plaintiffs.  In fact, the first amended consolidated complaint does not allege that the grand jury had any knowledge that defendant Delaney was asking about the murder in witness interviews.  To the extent they had such knowledge, the record reflects that they obtained that knowledge only through defendant Delaney's own testimony.  *See State v. Turner*, 333 P.3d 155, 162 (Kan. 2014) (Delaney related to the grand jury that he was asking BPU people connected to the case about the Chuck Thompson murder).

Because plaintiffs' abuse of process claims necessarily circle back to defendant Delaney's grand jury testimony, defendant Delaney is immune from these claims under *Rehberg*. These claims are dismissed.

*Supervisory Liability Claims under § Section 1983*

Because the court has determined that plaintiffs' § 1983 claims necessarily implicate defendant Delaney's grand jury testimony such that, under *Rehberg*, defendant Delaney is entitled to absolute immunity, defendants Blecha and Thomas cannot be liable as supervisors for that testimony. *See Van de Kamp v. Goldstein*, 555 U.S. 335, 343 (2009) (absolute immunity enjoyed by prosecutors extends to supervising attorneys); *Bryant v. City of Goodyear*, 2014 WL 2048013, at *6 (D. Ariz. 2014) (grand jury witness was entitled to absolute immunity under *Rehberg* so supervisory liability claims necessarily failed); *Walker v. City of Trenton*, 2013 WL 353346, at *4 (D.N.J. 2013) (applying *Van de Kamp* in the context of *Rehberg*; supervisors also entitled to absolute immunity); *Jackson v. Seewald*, 2013 WL 149341, at *7 (S.D.N.Y. 2013) (absolute immunity shields those who act in a supervisory role when the supervisee is protected by absolute immunity).

*State Law Claims*

Finally, having dismissed all claims over which the court had original jurisdiction, the court declines to exercise supplemental jurisdiction over plaintiffs' state law claims. *See* 28 U.S.C. § 1367(c). In doing so, the court is mindful of the fact that a scheduling order has yet to be entered in these cases and the parties have not yet commenced the discovery process. *See*

18

*Tonkovich v. Kansas Bd. of Regents*, 254 F.3d 941, 945 (10th Cir.2001) (given lack of pretrial proceedings, including total absence of discovery, considerations of judicial economy, convenience and fairness did not favor retaining jurisdiction).   These claims are dismissed without prejudice.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' motion to dismiss (doc. 36) plaintiffs' first amended consolidated complaint is granted.   Plaintiffs' § 1983 claims are dismissed with prejudice and plaintiffs' state law claims are dismissed without prejudice.

**IT IS SO ORDERED.**

Dated this 2nd day of July, 2015, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

19